Jones,
Chancellor, said he should have been gratified, if the order to stay made by him in the court below, had taken such a direction as to have been now passed upon by this court; but he had the same doubts expressed by the judges, whether that could be until the matter was here upon the appeal. He thought that the respondent, before bringing up this question, should at least have taken measures to compel a return upon the appeal. He regretted that the question could not be now decided; for it had been an embarrassing one to him in the court below; and hence the order to stay which he had made was temporary, and with a view that the subject might be considered here. The question related to the place of, and the course to be pursued in the examination and decision upon the effect of an appeal as to staying proceedings. The question had been before the house of lords in England. One difficulty there seemed to be, whether it should be determined by that court or the court of chancery; another, whether the respondent might proceed of course, and put the appellant to move for an order to stay ; or whether it lay with the respondent to apply, and obtain leave to proceed.- In 1807 or 1808, a standing rule of the house of lords adopted the former course. In a late cause wherein one of the circuit judges sat for him, the chancellor, the 28th rule of this *553 court, of April 16th, 1827, (a) was produced, which adopts the practice of the house of lords, as to cases not specifically provided for in the rules of this court; and the judge thought the standing order mentioned was comprehended *by that rule. It is an inquiry of some importance whether this be so. He, the chancellor, had his own views on the subject. He thought the question belonged to the court of chancery, as the late chancellor Kent had holden ; (b) and that that court had a discretion, to be exercised on motion of the respondent, or otherwise, as that court should direct. He should have proceeded upon this view of the case; but felt himself embarrassed by the decision of the circuit judge, who sat for him, in a cause in which he, the chancellor, had formerly been concerned as counsel.
Spencer, Senator, rose to move that the motion be denied. He thought it could not be passed upon by this court at any stage of the cause. If the appeal were returned, the court might hear a motion to quash it. But he did not think this court could direct the court below as to the effect of an appeal upon its proceedings. This seemed more properly an act of legislation; ■ and still some statute on the subject, he thought the court below should proceed upon its discretion, as the supreme court does in determining the effect of a writ of error. He did not believe that the rule of this court adopted the standing order of the house of lords. The words are “ that in cases not already provided for, the practice of this court shall be similar to the practice of the court of exchequer chamber in England, and that on appeals it shall be conformable to that of the house of lords in England when sitting as a court of appeals.”
This he thought related to the ordinary practice of that court; not to any peculiar forms of proceedings recently created by a general rule.
Jones, Chancellor, said the house of lords had occasion *554 ally interfered upon this question. But he concurred in the motion of the honorable senator, on the ground that the present application was premature. He added that he felt his own views so much strengthened by what had fallen from the judges and the honorable senator, that he should no longer ^hesitate to act upon the question in the court of chancery, as a matter proper for the discretion of that court.
Motion denied, (c)

 Ante, 293.

 Vid. Messionier v. Kauman, (3 John. Ch. Rep. 66,) and the eases cited in that cause; and the order of the house of lords there cited.

 In Dewes v. Morgan, (5 Price, 468, A. D. 1818,) in the exchequer, notice was given by the defendant that he intended to appeal to the lords, from certain orders; and
Dauncey & Raithby moved the court below, that all proceedings stay till the appeal should be heard.
The Solicitor-General & Blake opposed the motion, on the ground that it should have been made to the lords ; and cited Huguenin v. Basely, (15 Yes. 180.)
Graham, Baron. I have considerable doubt about the propriety of the present application to its; for I accede entirely to the opinion expressed by the chancellor in Huguenin v. Basely, that it is, at least, much more expedient that such an application should he made to the house of lords; and for the unanswerable reason given by his lordship, that such application, if encouraged, would paralize the arm of justice. In subsequent cases too, the house of lords has been declared to be the proper court to which to apply on similar occasions; (Waldo v. Caley, 16 Yes. 206; Willan v. Willan, id. 89, 216;) and that an appeal lodged does not, ipso facto, stay the proceedings.
Wood, Baron. This court has, most undoubtedly, authority to suspend its own proceedings at any time, and the. practice of appeals proves it; for ü it were bound by its orders, the right of appeal would, in many instances, he altogether taken away. Writs of error from courts of law are writs of right, and when they have bceri sued out and hail put in, they suspend the proceedings, ipso facto, ct ex debito justitirs» It used to he the same in appeals from courts of equity, until the general order of the house of lords was made for the purpose of altering the practice in that respect, in 1807. (15 Vesi 184.)
But notwithstanding that order, the court of chancery has held, that the proceedings may be stayed on special application for that purpose, and that such an application may he made to either the court below, or to the court of appeal; although the chancellor observes, in the case of Huguenin v. Basely, that it is more expedient that the application should be made to the house of lords if it can.
Order to stay till further order.
But now as to the state of New York, the efleot of an appeal from the
*555 court of chancery in respect to staying proceedings, seems, in the main, to be settled by the new revised statute, (Pt. 3, ch. 9, tit. 3, art. 3, § 80 to 89 inclusive.) By this statute certain securities or deposits are to stay proceedings in most cases, as on writs of error from the courts of law. In other cases the chancellor is to exercise a discretion. None appears, by that statute, to be given to the court of errors. The chancellor is to prescribe, by general rule, the effect which an appeal from a vice chancellor shall have in staying proceedings. (N. R. L. pt. 3, ch. 1, tit. 2, art. 3, § 61.) And the present chancellor Walworth (1829) has carried this provision.into effect by his 116th rule, adopting for the vice chancery, with a single exception, all the provisions, on this head, of the statute in respect to chancery, mutatis mutandis.